

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

September 8, 1948

Hon. Theophilus S. Painter, President
The University of Texas
University Station
Austin, Texas

Opinion No. V-677.

Re: Reconsideration of Opinion
No. V-482 relating to the
authority of The University
of Texas to purchase glass.

Dear Dr. Painter:

Your request for a reconsideration of our opinion No. V-482 is as follows:

"Reference is made to your opinion No. V-482, dated January 24, 1948, and addressed to Honorable George H. Sheppard, Comptroller of Public Accounts. One of the accounts presented by Mr. Sheppard and ruled on in the opinion as being within the province of the Board of Control had to do with the 'installation of a plate glass top for the serving counter in the cafeteria.' Apparently, the information before your office with regard to this claim did not present the true facts and circumstances regarding the claim, which facts and circumstances we respectfully submit would have resulted in a ruling that the transaction was the responsibility of the Board of Regents of The University of Texas and not of the Board of Control. May I respectfully request your consideration of these facts and circumstances as set out below:

"The claim involved was in favor of Binswanger and Company, P. O. Box 911, Austin, Texas, in the amount of $85.68. The invoice described the items furnished as follows:

"'8 pc. 10 x 34 Plate Glass - PE
8 pc. 7½ x 34 Plate Glass -    *
4 pc. 12 x 12 - Cut on job

Installed on serving counter-(Cafeteria)
With felt & cement                    $85.68'

"The installation of the plate glass involved was in fact a part of a major permanent improvement project under an Educational Facilities Contract with the Federal Works Agency of the United States Government, Project No. Tex. 41-V-12. Under this contract, FWA furnished surplus Government buildings and erected them on the University campus so as to provide thirteen separate structures with an aggregate floor space of 112,693 square feet. One of the thirteen buildings was specifically designated in the contract for use as a cafeteria, this building alone involving 11,231 square feet of floor space. The University was required to furnish all costs of site preparation, bringing up the utility lines to the building, and installing furniture and equipment in the building. The majority of the furniture and equipment involved was furnished by the Government out of surplus Government stocks; but much of the equipment, especially that required for the operation of the cafeteria, was damaged and required repair and renovation in addition to being put in place. Some of the work required to be done by the University was accomplished by contracts and some of it was done with our regular maintenance staff. The procurement of the plate glass involved in the claim described above was for glass to be installed in brackets attached to the serving counter designed in such a way to serve as a dessert compartment above the counter itself, and the glass and bracket supports constituted an integral part of the serving counter.

"Our procedure in contracting for the purchase of the glass and its installation was to call for bids to be opened at 10:30 A. M. October 1,

1947, on the basis of a specification in form attached hereto.

"Requests for bids were sent to the following firms:

"Calcasieu Lumber Company, Austin, Texas
Binswanger and Company, Austin, Texas
Austin Glass Corporation, Austin, Texas
Becker Lumber Company, Austin, Texas
Pittsburgh Plate Glass Company, San Antonio, Texas.

"Only one proposal was received, namely, that of Binswanger and Company; and since their quotation involved a price which was considered fair and reasonable and since the work was needed in order to complete the installation of the equipment necessary to opening of the cafeteria, the bid was accepted and the contract awarded notwithstanding the fact that only one bid was actually received. Because of the small size of the transaction, a formal contract agreement was not prepared and executed; but instead, a purchase order was issued as evidence of our acceptance of the proposal and authorization to proceed with the installation.

"The actual installation of the plate glass involved was accomplished during the early part of October, 1947. The cafeteria was first opened for business on December 6, 1947.

"It is respectfully submitted that the above-stated facts and circumstances clearly show that the purchase of these materials was for and in connection with 'a major permanent improvement,' inasmuch as the materials installed became a part of the structure itself, and, therefore, exclusively under the jurisdiction of the Board of Regents of The University of Texas under the ruling in Opinion No. V-482; but in any event, the purchase was for the initial equipping and furnishing of the building, coming under the exclusive jurisdiction of the

Board of Regents, and not under the State Board
of Control . . . .

"As a matter of fact, we think our interpre-
tations in this respect are consistent with the rul-
ing of your Opinion No. V-482, or, at any rate, that
they should be so considered.

"May I respectfully request that on the basis
of the facts given you with respect to the plate glass
purchase referred to earlier in this letter that you
modify that portion of Opinion No. V-482 so as to
hold that such purchase was in the responsibility of
the Board of Regents of The University of Texas."

We thank you for the very full statement of the basic
facts upon which you seek such reconsideration.

The answer to your question is controlled by a consid-
eration of the two statutes having to do with the expenditure of
moneys of the State on behalf of The University of Texas. They
are Articles 634 and 2592 of the Revised Civil Statutes as the same
have been amended.

Article 2592, insofar as it is pertinent, is as follows:

"The Board of Regents of the University of
Texas . . ., shall, with the approval of the Legis-
lature, expend the available University fund for
the construction of buildings on the campuses . . .
and for the extension and improvement of their
campuses and for the equipment of buildings
thereon in the proportions and amounts herein-
after indicated . . ."

Article 634 is as follows:

"The Board of Control shall purchase all the
supplies used by each Department of the State Gov-
ernment, including the State Prison System, and
each eleemosynary institution, Normal school, Ag-
ricultural and Mechanical College, University of
Texas, and each and all other State Schools or De-

partments of the State Government heretofore or
hereafter created. Such supplies to include fur-
niture and fixtures, technical instruments and
books, and all other things required by the differ-
ent departments or institutions, except strictly
perishable goods."

The latter Article is a part of Chapter 3 of Title 20
creating the Board of Control, making that body the general pur-
chasing agency for the State departments and institutions.

The various Legislatures from the enactment of Ar-
ticle 2592 down to and including the 50th, have made appropria-
tions for the maintenance of the University of Texas of all the
Available University Fund except that portion of the fund appro-
priated to the Agricultural and Mechanical College of Texas. The
rider to the Appropriation Bill for the University of Texas (Acts
1947, 50th Legislature, H. B. 246, Sec. 5), provides in part as
follows:

"Sec. 5. . . . The residue of said Available
Fund, if any, may be expended for permanent im-
provements, equipment, instructional and other
educational services, repairs and physical plant
operation and maintenance."

Both Article 2592 and the appropriation for this bien-
nium authorize the Board of Regents of the University to expend
its Available Fund for the purposes mentioned. If there were no
other statutes to control the expenditure of this money, then the
implication would be strong that the intention of the Legislature
was to delegate to the governing body of the University the exclu-
sive authority to make any and all purchases required. However,
the strength of this implication is materially weakened when we
consider that at the time of the passage of Article 2592 there was
in effect a statute which evidenced a policy that purchase of cer-
tain supplies should be made through a central purchasing agency.
While it is true that if there is any conflict between the provisions
of Article 2592 and Article 634, the provisions of Article 2592 (a
later Act) would necessarily control, we are required by the prin-
ciples of statutory construction to reconcile as far as possible
these two expressions of the Legislature.

This brings us to a consideration of what expenditures authorized by Article 2592 and the Appropriation Bill are covered by Article 634; and, specifically, whether Article 634 covers an item such as the glass top which we now learn from your request was a part of a construction project which was tied to and became a part of the realty. Article 634 speaks in terms of supplies which are principally items of personal property. There is nothing in this statute which attempts to give the Board of Control authority to make contracts for construction projects on the campuses of educational institutions, or to make purchases of those supplies which go into such construction projects. Attorney General's Opinion No. V-482 and 0-3768. On the contrary, this responsibility is expressly vested in the Board of Regents of the University by Articles 2592 and 2593.

In Attorney General's Opinion No. 0-5698 this Department advised the University that the phrase "contracts for the construction of permanent improvements" as used in Article 2593 embraces contracts for the alteration and major repair of existing buildings, and construction of improvements and additions to existing buildings, as well as for the erection of new structures. The holding of that opinion indicates that with regard to items of construction, improvements and repairs, the Board of Regents is the ultimate authority. It would be an extremely anomalous situation if the governing body of the school was empowered to make contracts for the construction, repair, and improvements of the buildings under its control, and yet the purchase of supplies to carry out those contracts rested with the Board of Control. Even in the absence of a contract for the work, we believe that the Legislature intended to make the Board of Regents the sole authority with respect to the purchases of supplies as were needed to repair, construct, and erect buildings on the campus.

Therefore, based upon the new and additional facts presented in your request, you are advised that the contract for the plate glass purchased by the University, being a part of a construction project, did not have to be approved by the Board of Control. This is in accord with our Opinion No. V-482 which was written on an entirely different set of facts relating to the same glass. There it was treated as personalty without knowledge that it was used as part of a construction project.

## SUMMARY

The University of Texas does not have to secure the approval of the Board of Control on a contract for the purchase of plate glass used for and in a construction project. Art. 2592, V. C. S.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By      *Martin Harris*

Martin Harris
Assistant

APPROVED:

*Price Daniel*

ATTORNEY GENERAL

MH:erc